**MENDEZ v. MENDEZ.   (No. 571-4390.)***

(Commission of Appeals of Texas, Section B.
Dec. 10, 1925.)

**1. Insurance ⬦➞769—De facto wife of member of benefit society held proper beneficiary of policy.**

Where member of fraternal benefit society was not divorced, his de facto wife, who entered relation in good faith and was named beneficiary in policy, *held* a proper beneficiary.

**2. Insurance ⬦➞778—Lawful wife is entitled to insurance as against de facto wife, if beneficiary not named.**

Where, the beneficiary of a policy in a fraternal benefit society is not named, a lawful wife will prevail as against a de facto wife.

**3. Insurance ⬦➞771—Fraternal benefit society can establish rule that no wife except lawful one may be beneficiary.**

In absence of contrary statutory regulation, a fraternal benefit society can establish a rule that no wife except lawful one may become a beneficiary in one of its policies.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Concepcion L. de Mendez against the Sovereign Camp Woodmen of the World, wherein Emilia Gonzales de Mendez intervened. Judgment for plaintiff was reversed and rendered on intervener's appeal to the Court of Civil Appeals (269 S. W. 142), and plaintiff brings error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

Samuel Belden and Haltom & Haltom, all of San Antonio, for plaintiff in error.

Sid Overton and Norton & Brown, all of San Antonio, for defendant in error.

POWELL, P. J. The opinion of the Court of Civil Appeals, written by Chief Justice Fly, fully states the facts and issue involved in this case. See 269 S. W. 142. Rosalio Mendez, on February 22, 1909, married Emilia Gonzales. They lived together as man and wife until September 20, 1914. On July 13, 1916, Rosalio procured a license and was duly married by a justice of the peace to Concepcion Larez. They then lived together as man and wife, in the town of New Braunfels, where they were married, until Rosalio died in the summer of 1923. About one year before his death, he procured a life insurance policy in the sum of $1,000 in the Woodmen of the World. He named Concepcion, describing her as wife, the beneficiary in this policy. Upon his death, Emilia also claimed the proceeds of the policy on the ground that Concepcion could not be the benficiary in the policy because she was not the lawful wife of Rosalio. The insurance company did not contest the claim. It de-

posited the money in the court and asked the latter to pay it out to the one it should find entitled to receive it. Upon the hearing in the district court, without a jury, judgment was rendered for Concepcion, the beneficiary named in the policy. Upon appeal to the Court of Civil Appeals, the judgment of the district court was reversed and judgment rendered in favor of Emilia. The one question before us is: Which judgment is correct?

[1] Under the undisputed facts in this case, Concepcion married Rosalio, in good faith, thinking she and he were both lawfully entitled to marry. She knew he had been married before, but he told her he had been divorced and could marry again. Not only so, but when he asked the consent of the father of Concepcion to the marriage, the father asked him if he had been duly divorced and he received an affirmative answer from Rosalio. Not only so, but Concepcion's father testified that he went to the courthouse and asked about the matter and was informed that there had been a divorce. The facts are that Rosalio had not been divorced, but had filed such a suit against Emilia on September 29, 1915. After he married Concepcion, his attorney had the suit dismissed. Rosalio and Emilia never lived together after their original separation.

It is further undisputed that the premiums paid for the policy in suit were the savings of Concepcion while she lived with Rosalio as his wife. She served him faithfully in every way as his wife until his death and bore him three children.

The Court of Civil Appeals takes no issue with the claim of Concepcion that she acted in good faith in her marriage. That court says:

"But her lack of knowledge of the marriage relation existing between appellant [Emelia] and Rosalio Mendez could not place her in the position of a legal wife, and entitle her to take a position among those entitled to be designated as beneficiaries. Her good faith under the circumstances could not move her from the position of a deceived unmarried woman to that of legal wifehood. The fraud perpetrated upon her did not make her a lawful wife, the only one who can be a beneficiary under the statute, and her innocence could not transform her into a woman whose relation to deceased was sanctified by wedlock."

Judge Fly says, in above quotation, that a wife must be a lawful wife before she can become a beneficiary under the statute. We have read the statute, and it says the beneficiary may be the "wife" or certain others, and that within the persons named the insured can select his own beneficiary. The language of the statute in this respect is exactly like the by-laws of the insurance company. This statute was written after our Supreme Court had written many opinions

⬦➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied January 27, 1926.

about putative wives and de facto wives. It is but reasonable to presume that, in view of all such decisions, the Legislature would have added the word "lawful," just as Judge Fly has done, if they had wished to do so. But they did not do so. Nor does any portion of the act passed in 1923, or any other similar act, contain any provision showing any legislative intent that a man could not name a wife in Concepcion's status as his beneficiary in a fraternal insurance policy.

Judge Fly states that the case of Kinney v. Tri-State Telephone Company, 222 S. W. 227, is decisive of the case at bar. The opinion in the Kinney Case was written by Judge Sadler for this section of the Commission of Appeals. We do not agree that it is decisive of the case at bar in any sense. For instance, in the Kinney Case, Judge Sadler found:

"The uncontradicted evidence is that H. B. Kinney did not make any written application showing good cause for change of beneficiary as provided by the plan, and designated no beneficiary other than his lawful wife. The committee having charge of the management of the fund so found, Howard C. Vaille so testified, and the trial court so found."

[2] Where a man has one lawful wife and one de facto wife, and he does not designate which wife shall get his insurance, then we think it clearly right that the lawful wife should prevail in the courts of our country. But Judge Sadler did not say that the insured could not, if he so desired, name one as beneficiary who was situated as Concepcion is here. In fact, he goes on to show other differences between that case and the case at bar, as follows:

"The good faith of Elsie cannot affect the transaction, because the property involved in this litigation is not property which has been accumulated by the joint efforts of H. B. Kinney and Elsie during the purported marriage estate. It is rather a donation or bounty provided by the telephone company for the protection of specific beneficiaries. The fund clearly goes, not by designation of H. B. Kinney, but by virtue of the provision of the plan, to the lawful wife at the date of his death, whomsoever she may be."

The Kinney Case is the only one cited by Judge Fly. After reviewing the authorities, in Texas and elsewhere, we think the judgment of the trial court should be affirmed and Concepcion recover this insurance money.

The case of Insurance Co. v. Cummings, 66 Or. 272, 126 P. 982, 133 P. 1169, Ann. Cas. 1915B, 535, 47 L. R. A. (N. S.) p. 252, is a very interesting one in this connection. On the latter page of that volume (47 L. R. A. [N. S.]) is an exhaustive note. One of the paragraphs of that note reads as follows:

"It seems to be well settled that a woman who is formally married to a man believing in good faith that the marriage is legal, and who lives with him as his wife, and is recognized as such by friends and acquaintances, may be designated as beneficiary as his wife in his insurance policy, and, if so designated, is entitled to the fund upon his death, although in fact the formal marriage was for some reason illegal."

The author supports the text of aforesaid quotation by citation of numerous authorities. The authorities support the text as claimed. This is unquestionably the law. It is the law because it ought to be.

[3] It must be remembered that the case at bar is not one where the insurance company had any by-law against one situated as Concepcion was. The insurance company is not trying to pay the money to Emilia. It did not contend that it would not have issued the policy had it known the facts. It did not claim any fraud practiced by Rosalio or Concepcion in securing the policy. We think it clear that, in the absence of contrary statutory regulation, a fraternal society could establish a rule that no wife except a lawful one could become a beneficiary in one of its policies. If such a rule should be established, it would be upheld by the courts in all probability, unless the company be required to pay, under a given policy actually issued, in such a case because of fraud or estoppel.

Again, it must be remembered that we do not hold or intimate that the Legislature of Texas could not, if it so desired, pass a statute which would eliminate the claims of de facto wives under insurance policies of this kind. But, until such a statute is passed, if it is ever passed, we think we must look to the decisions of our courts for guidance. And there is no just reason shown, in our judgment, in any decision why Concepcion should not recover this money. We shall not quote from the authorities which are clearly in point. We do not say the same rule should apply where people are living together without having been formally married. We are merely announcing the rule applicable to the facts surrounding Concepcion.

Turning to the Texas cases, we find none directly in point, involving an insurance policy. But we do find that the Supreme Court of Texas does recognize the relation of a de facto wife and gives her certain rights and imposes upon her certain obligations. The case of Barkley v. Dumke, 99 Tex. 150, 87 S. W. 1147, is a very interesting one. In that case, a girl, 15 years of age, married a man who was not divorced from a former wife who was still living. After that marriage, he and she made a deed conveying the property of the minor wife. Later, it was sought to recover back the property on the ground that she was a minor and unlawfully married to a man not divorced from a former living wife. The Supreme Court, speaking through Chief Justice Gaines, held her deed, joined in by her husband, was valid and

binding. The court went on to say it could not so hold under the strict rules of the common law, but that we were governed in this particular matter rather by the Spanish jurisprudence. Judge Gaines then says:

"The rule of the Spanish law with reference to such marriages as that which took place between Wood and Miss Hardesty is thus expressed by the same eminent judge in Lee v. Smith (18 Texas, 142): 'In Spanish law, such marriage is designated as putative, and the consort who enters into such matrimony ignorant that her partner has a wife or husband living, is in law not only innocent of crime, but has all the rights, incidents and privileges pertaining to lawful marriage, and these are continued as long as there is ignorance of the former, or of impediment to the second marriage.' "

Still further along, Judge Gaines makes this significant ruling:

"Therefore we think it should be taken as the settled doctrine in this state, that in case of a marriage of the character of that in controversy, the putative wife, so long as she acts innocently, has as to the property acquired during that time the rights of a lawful wife. If as a de facto wife she have the rights of a lawful spouse, we think it follows as a necessary corollary, that she has corresponding obligations and that her status becomes that of a lawful married woman."

Under this decision, so long as the Legislature does not enact otherwise, and so long as the insurance company does not object, we think Concepcion had the right and privilege of being named beneficiary by Rosalio just as effectively as she would have had that right if Rosalio had been legally divorced from Emilia. If a minor, under a similar marriage, is made grown by such marriage so she can convey away her property, and if a husband similarly situated as was Rosalio can act so as to make a deed valid which deed must, under the law, be joined in by a husband, we see no reason why a woman like Concepcion cannot be made beneficiary in a policy by her de facto husband.

Our Texas courts have held that fathers may insure their lives for the benefit of their illegitimate children. See Stahl v. Grand Lodge, 44 Tex. Civ. App. 203, 98 S. W. 643. These same courts have also, in numerous cases, held that de facto wives will be protected in their interest in community property acquired while they lived with their husbands.

We fail to find any reason, in law or equity, why it should be held that Concepcion, as a de facto wife, should not recover the insurance which she helped to pay for and which Rosalio wanted her to have. Emilia was separated from her husband and had no part either in the acquiring of this insurance policy or paying the premiums therefor.

In view of what we have stated in the next preceding paragraph, it is not necessary for us to decide whether or not Concepcion, as a "dependent," under an appropriate pleading raising the issue, could recover this insurance. Therefore we express no opinion upon that point.

For the reason indicated, we recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.